UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**ADAM D. AVRAMIDES,**

    **Plaintiff,**

v.                                            Case No: 8:12-cv-2104-T-27TGW

**LIBERTY MUTUAL FIRE INSURANCE COMPANY,**

    **Defendant.**

_____

## ORDER

**BEFORE THE COURT** is Plaintiff's Motion To Exclude Defendant's Testifying Trial Experts, and/or in the Alternative, Motion to Exclude Certain Defendant's Testifying Trial Experts Pursuant To Daubert v. Merrell Dow Pharmaceuticals (Dkt. 32). Defendant has responded in opposition (Dkt. 37). Upon consideration, Plaintiff's Motion is GRANTED in part and DENIED in part.

### DEFENDANT'S EXPERT WITNESSES

Defendant disclosed four experts for trial: Marc A. Leonard, Daniel P. Barton, Aaron T. White, and Michael Cain.[1] (*See* Dkts. 32-15, 32-17). Plaintiff moves to exclude all of Defendant's trial experts for a number of reasons. First, Plaintiff contends Marc Leonard and Daniel Barton should be excluded for failure to provide subpoenaed documents regarding their financial compensation. (Dkt. 32 at 2-7). Second, Plaintiff requests exclusion of the Rimkus Experts for

_____

[1] Marc A. Leonard, Daniel P. Barton, and Aaron T. White are employed by Rimkus Consulting Group, Inc. and collectively are referred to as "the Rimkus Experts." (Dkt. 32-17). Michael Cain is employed by MCD of Central Florida. (Dkt. 32-15).

failure to provide documents claimed to support their opinions.[2] (Dkt. 32 at 7-12). Plaintiff also requests exclusion of the "Rimkus Expert Report" for lack of foundation. (Dkt. 32 at 10-12). Third, Plaintiff moves to exclude Michael Cain, P.G. pursuant to Federal Rule of Civil Procedure 37 because Defendant's disclosure was untimely. (Dkt. 32 at 12-18). Fourth, Plaintiff requests that all but one of Defendant's experts be excluded because their testimony is cumulative. (Dkt. 32 at 18-20). Finally, Plaintiff requests exclusion of the Rimkus Experts because they destroyed draft copies of their expert reports. (Dkt. 32 at 20).

## *The Rimkus Experts*

### Subpoenaed Documents

Plaintiff claims that the Rimkus Experts, Marc Leonard and Daniel Barton, refused to provide documents regarding their financial relationship with Defendant which Plaintiff requested multiple times. Plaintiff requested this information first through a request for production of documents to which Defendant responded that such information would be provided with Defendant's expert disclosures. (Dkt. 32-1 at 14-15). Plaintiff then requested the documents through Rule 45 subpoenas duces tecum. (Dkt. 32-3). After the depositions of Marc Leonard and Daniel Barton, Plaintiff served a Rule 45 subpoena requesting the financial documentation from the records custodian of Rimkus Consulting Group, Inc. ("Rimkus") (Dkt. 32-4) to which Rimkus served written objections (Dkt. 32-5). Plaintiff then served a Third and Fourth Request for Production of Documents on Defendant. (Dkts. 32-7, 32-14). Defendant responded to each request with written objections.

The discovery cut-off date was September 13, 2013. (Dkt. 14). Defendant responded to the first request for production on November 13, 2012, Marc Leonard's and Daniel Barton's depositions

---

[2] Alternatively, Plaintiff requests that Defendant be required to produce the documents and information.

took place on May 1, 2013,[3] Rimkus responded to the Rule 45 subpoena on June 24, 2013, and Defendant responded to the final request production on August 28, 2013. Yet, Plaintiff did not move to compel the production of the requested documents, until now.[4]

As demonstrated by Defendant's response to the Motion, this dispute could have been properly addressed through a motion to compel. Defendant produced some documentation in response to Plaintiff's requests, but contends that "much of the requested documentation does not exist." (Dkt. 37 at 4). For example, Defendant responds that Mr. Leonard and Mr. Barton are salaried employees and, therefore, "receive no specific compensation pertaining to their work related to Mr. Avramides' dwelling. There were therefore no documents to produce other than the invoice from RIMKUS to Liberty Mutual for the work related to Plaintiff's claim. That invoice was produced to Plaintiff." (*Id.*) Plaintiff has provided no authority to support striking Defendant's experts on the basis that Plaintiff finds insufficient Defendant's objections to the requests for production and the experts' objections to the Rule 45 subpoenas. In addition, Rimkus provided at least some documentation regarding the experts' financial relationship with Defendant. Plaintiff does not specifically explain what further information he seeks or why Defendant's and/or Rimkus' objections were insufficient. (*See* Dkt. 32-1 at 42-43; Dkt 32-5 at 9-11). Thus, on this basis, the testimony of Mr. Leonard and Mr. Barton will not be excluded.

---

[3] Marc Leonard's deposition was completed on August 1, 2013. (Dkt. 32 at 3 n.1).

[4] On January 14, 2014, Plaintiff filed a Motion to Compel Defendant to Provide Better Discovery Responses to Plaintiff's Fourth Request for Production Served on August 28, 2013 (Dkt. 46). The Motion was denied as untimely and for failure to comply with Local Rule 3.04(a). (Dkt. 47).

**Documents Supporting Expert's Opinions**

Plaintiff also asserts that the Rimkus Experts refused to provide the documents on which they purport to rely in their report. These documents include: (1) the underlying documentation used to create a two-column chart included in the Report of Findings issued on November 1, 2011 (Dkt. 32-9 at Bates No. 000049); (2) aerial photographs reviewed by Marc Leonard; (3) other documentation cited in the experts' report as relied upon as the "Basis of Report" (*see* Dkt. 32-9 at Bates No. 000017); (4) a "copy of any seminar(s) or meeting(s) or PowerPoint presentation(s) or peer group meeting(s) programs wherein Daniel Barton has been the presenter or speaker from 2010 to the present;" and (5) documents relating to the "Rimkus Live" program.[5] Again, much of this dispute appears to be one that should have been addressed through a motion to compel. Plaintiff cites the *Daubert* standard but does not actually contest the Rimkus Experts' competence, methodology, or that their testimony will not assist the trier of fact. *See Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1341 (11th Cir. 2003) (quoting *City of Tuscaloosa v. Harcros Chems., Inc.*, 158 F.3d 548, 562 (11th Cir.1998)).

Pursuant to Federal Rule of Civil Procedure 26(a), an expert witness must produce a report which contains, among other things, "a complete statement of all opinions the witness will express and the basis and reasons for them" and "the facts or data considered by the witness in forming them." Fed. R. Civ. P. 26(a)(2). In addition, Rule 26(e) states a party must supplement its expert

---

[5] Plaintiff also contends that the experts relied on "a copy of Rimkus' geographical report listing sinkholes within a one (1) mile radius of the Plaintiff's home" and that Defendant has not provided documents regarding any complaints against Daniel Barton, including a September 20, 2011 complaint. As to the former, Plaintiff has provided no information regarding this report other than a copy of his request for production and Defendant's response that "no documents responsive to the request in the care, custody or control of Liberty Mutual." (Dkt. 32-7 at 8). As to the latter, is not apparent how any of the experts would have relied on a complaint against Mr. Barton in their report and Plaintiff has provided nothing to demonstrate that they have.

report "if the party learns that in some material respect the disclosure or response is incomplete or incorrect." Fed. R. Civ. P. 26(e). The Eleventh Circuit has explained that "the expert disclosure rule is intended to provide opposing parties reasonable opportunity to prepare for effective cross examination and perhaps arrange for expert testimony from other witnesses." *Reese v. Herbert*, 527 F.3d 1253, 1265 (11th Cir. 2008) (quotation omitted).

As to the non-descript two-column chart, the deposition testimony of Marc Leonard and Daniel Barton demonstrates that they have not refused to provide the underlying data upon which the chart was created.[6] Rather, they did not keep track of the data or data sources used to create the chart. (*See* Leonard Dep. at 256:1-261:15; Daniel Barton Dep., May 1, 2013, Dkt. 32-12 at 50:13-53:18). Moreover, the underlying data is constantly changing and would not necessarily be the same now as it was at the time the Report of Findings was prepared. (*See* Leonard Dep. at 259:24-260:6). Rimkus compiled the chart based on information it had at the time regarding sinkholes within a one-mile geographical radius from the Avramides home. (Leonard Dep. at 259:4-260-2). Plaintiff wants the underlying data so that he can "verify the veracity of the numbers and calculations." (Dkt. 32 at 8). However, neither Marc Leonard nor Daniel Barton knew at the time of their deposition precisely what the underlying data was. Although Plaintiff, and even Defendant's experts, may not be able to precisely recreate the chart, that issue and any potential weakness in their testimony on the

---

[6] This two-column chart is a chart of twenty-one properties where grout has been utilized and includes the depth to limestone and grout ratios for each property. (Dkt. 32-I at Bates No. 000049; Marc Leonard Dep., Aug. 8, 2013, Dkt. 32-11 at 256:9-257:8). The chart is included in the Report of Findings regarding the Avramides Residence Structural Damage Assessment issued on November 1, 2011 and incorporated in a September 14, 2012 letter signed by Mr. Leonard and Mr. Barton filed in connection with Defendant's Notice of Removal. It appears that the two-column chart was used to estimate the cost to remediate the problems on Plaintiff's property. (*See* Barton Dep. at 50:9-12). The September 14, 2012 letter was submitted to support the amount in controversy and included an estimate of $148,658.00 for the cost of "compaction grouting and chemical grouting at the Avramides residence." (*See* Dkt. 32-8; Dkt. 37 at 7-8).

subject may be explored on cross-examination. *See Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 596 (1993) ("Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.").

As to the aerial photographs, Mr. Leonard's deposition testimony establishes that they did not provide useful information and did not form the basis of his opinions. (*See* Dkt. 37-1 at 308:19-312:7). As to the documents relating to the "Rimkus Live" program, Defendant asserts that Plaintiff has the full case file, and thus, all of the information referred to in "Rimkus Live." (Dkt. 37 at 13). As to the other documentation cited in the experts' report as a "Basis of Report" (Dkt. 32-9 at Bates No. 000017), Plaintiff does not specify which materials he did not receive. Finally, as to Daniel Barton's presentations or programs, Plaintiff did not file a motion to compel based on the insufficiency of Defendant's objection to the request for this information and they are not purported to be the basis of any of the experts' opinions. The testimony of the Rimkus Experts will not be excluded on these bases.

**Draft Copies of Expert Reports**

Plaintiff contends that the Rimkus Experts should be excluded because "it is the normal business practice of Rimkus to destroy drafts, . . . thus retaining only the final version of the report in its file." (Dkt. 32 at 20; *see* Leonard Dep. at 130:22-131:5). Defendant asserts that the Rimkus Report "existed as a living document that was changed by various contributors in its electronic form. No paper 'drafts' were maintained or 'destroyed.'" (Dkt. 37 at 15). Plaintiff provides no authority that Defendant's experts should be excluded based on the fact that they did not maintain paper copies of any draft reports. And, Rule 26(b)(4) provides some protection to drafts of "any report or

disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded." Fed. R. Civ. P. 26(b)(4)(B) & advisory committee note (2010 amends). Without more, Plaintiff's unsupported observation is not a basis to exclude the Rimkus Experts.

### *The Rimkus Report*

Plaintiff attaches a September 14, 2012 "report" signed by March Leonard and Daniel Barton which is a two-page letter to an attorney for Defendant that provides a estimate for the cost of "compaction grouting and chemical grouting at the Avramides residence" and references the "Avramides Residence Structural Damage Assessment" issued on November 1, 2011. (Dkt. 32-8 at 13-14). Plaintiff also attaches the "Report of Findings" regarding the Avramides Residence Structural Damage Assessment issued on November 1, 2011. (Dkts. 32-9, 32-10). It appears that the November 1, 2011 Report, as referenced in the September 14, 2012 letter, is "the Rimkus Report" to which Plaintiff objects. Regardless, if Defendant attempts to offer an expert's report as evidence at trial, Plaintiff may object to it at that time.

### *Matthew Cain*

Plaintiff moves to strike the testimony of Matthew Cain as untimely pursuant to Rule 37(c)(1). The deadline to disclose trial experts was June 21, 2013 and rebuttal experts was July 11, 2013. (Dkt. 14). On July 12, 2013, Defendant filed its Supplemental Expert Disclosure disclosing Matthew Cain as its expert for the first time. (Dkt. 32-14). On that same date, Defendant also filed its Rebuttal Expert Disclosure listing Matthew Cain as a rebuttal witness. (Dkt. 32-15). In addition, Defendant served Mr. Cain's expert report late on September 4, 2013. (Dkt. 32-18). After the late disclosure of Mr. Cain, Plaintiff filed its rebuttal witness on July 24, 2013. Defendant submits that the filing of its Rebuttal Expert Disclosure one day late was "wholly inadvertent and the result of

clerical error." (Dkt. 37). Defendant does not address the untimeliness of its Supplemental Expert Disclosure or Mr. Cain's expert report.

If a party fails to disclose to the other parties, the identify of an expert witness "at the times and in the sequence the court orders, . . . the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 26(a)(2)(A), (D); Fed. R. Civ. P. 37(c)(1). "The burden of establishing that a failure to disclose was substantially justified or harmless rests on the nondisclosing party." *Mitchell v. Ford Motor Co.*, 318 Fed. App'x. 821, 824 (11th Cir. 2009).

Because Defendant disclosed Mr. Cain for the first time twenty-one days after the deadline, and his report seventy-five days after the deadline, and Defendant has not addressed the untimeliness of these disclosures, Mr. Cain's testimony will be excluded in part. Defendant timely disclosed three other experts who are able to testify "with respect to [their] observations, opinions and recommendations regarding the damage at the Plaintiff's property," and therefore will not be without an expert witness at trial. (Dkts. 32-17, 32-15). However, Defendant's disclosure of Mr. Cain as a rebuttal witness was only one day late, due to inadvertence, and his expert report, although late, was provided approximately six months before trial. In addition, Plaintiff was granted leave to depose Mr. Cain after the discovery deadline and after Plaintiff received Mr. Cain's expert report. (*See* Dkts. 33, 34). Defendant's untimely disclosure of Mr. Cain as a rebuttal expert was harmless and his testimony as a rebuttal expert will not be excluded. *See Ferguson v. Bombardier Servs. Corp.*, 244 Fed. App'x 944, 950 (11th Cir. 2007) (district court's decision to permit expert report to be submitted after the deadline, but approximately eight months before the start of trial, was not an abuse of discretion).

8

*Cumulative Testimony*

Plaintiff's request that only one expert be permitted to testify at trial is somewhat premature. Defendant will not be permitted to offer cumulative testimony. *See* Fed. R. Evid. 403. However, Defendant is not required to designate which experts it will call at trial at this time. Furthermore, it is premature to determine whether each expert's testimony is cumulative of any other expert.

Accordingly,

1. Plaintiff's Motion To Exclude Defendant's Testifying Trial Experts, and/or in the Alternative, Motion to Exclude Certain Defendant's Testifying Trial Experts Pursuant To Daubert v. Merrell Dow Pharmaceuticals (Dkt. 32) is **GRANTED** to the extent that the testimony of Defendant's expert, Matthew Cain, is excluded except to the extent he is called as a rebuttal expert witness. Plaintiff's Motion is **DENIED without prejudice** as to the cumulativeness argument and **DENIED** in all other respects.

**DONE AND ORDERED** this 17th day of January, 2014.

JAMES D. WHITTEMORE
United States District Judge

Copies to:
Counsel of Record